ALPHONSO STEWART v. STATE OF TENNESSEE.

1. CRIMINAL LAW.  *Dying Declarations.*  In order to make the statements of the deceased competent evidence as " Dying Declarations," it must appear that they were made in view of the certainty of death, or almost immediate dissolution.  It is not necessary that these apprehensions should be embodied in words to a by-stander by the deceased, but it will be sufficient if the danger be so imminent and immediate, as to satisfy the judge that the deceased must have been of necessity laboring under an impression of almost immediate dissolution.

2. SAME.  *Same.*  Dying declarations are also sometimes admissible for the reason that they are admitted on the ground of necessity, and to prevent the effect of a party destroying, by an act of violence, the only one who could testify against him, and thus escape punishment;  but in this class of cases it must appear that the deceased was the only witness of the transaction.  When disinterested and unsuspected witnesses are present, this rule does not apply.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county.  J. E. R. RAY, J.

T. H. LOGWOOD for Stewart.

ATTORNEY GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

The plaintiff in error was indicted for killing Lucy Lutton in the city of Memphis, by shooting her with a pistol; a verdict of guilty of manslaughter was rendered by the jury, and two years' imprisonment in the penitentiary fixed as his punishment; from which verdict and the judgment of the court thereon, an appeal in error brings the case to this court.

Several questions are presented in argument for reversal. We need notice but one matter, however, which is conclusive of the result, and compels a reversal of the judgment.

The contest in the case was not as to whether deceased was shot, but whether it was accidental or of purpose. The deceased was shot at the house of Jane Cuney, a friend with whom she was staying in the city of Memphis for the night. She and deceased had been playing and probably handling the pistol while standing in the floor. They had after this laid down across a bed in the room; probably a third party, named Kimball, was lying with them, one on either side of the girl. A question was asked by plaintiff in error, which she did not answer, when he remarked that if she did not he would shoot her— probably took up the pistol, which was "self-cocking," and it fired, the ball entering her side, from which she died in about ten days.

Dr. Nall was called in immediately, it being at

night, examined her, told her then she would die; in fact thought at the time himself that she would not live an hour, though she seems to have expressed no opinion on the subject. She told him then the circumstances, but insisted it was purely accidental and not purposely done. He called again to see her in about a week; found her cheerful and jesting, talked freely, said nothing to her about her death, nor does he seem to have thought she would then certainly die.

In this conversation, she again told him the circumstances, but said that she had told a story at the first conversation, about its having been an accident— that plaintiff in error had shot her on purpose.

This and other statements of hers made during the time of her confinement, were permitted to go to the jury as testimony, under the ruling of the Criminal Judge.

While the earlier cases and our own admit dying declarations on the principle, or as it has been so stated in the cases generally, that the solemnity of the circumstances of a party *in extremis* is equivalent to an oath; yet there are other cases, which place its admissibility on the ground that in case of death of the deceased, such declarations shall be admitted on the ground of necessity, and to prevent the effect of a party destroying by an act of violence, the only one who could testify against him, and thus escape punishment. See cases cited in *Potete* v. *The State*, MS., April Term, 1877.

Whichever be the true ground on which the admissibility of such testimony rests, still we think the

testimony in the case was inadmissible; no such necessity existed here, as there were two other disinterested and unsuspected witnesses present in the room who saw the entire transaction. As the declaration of a party *in extremis*—and this must be shown in such a case as this—it is clear, under the decisions of this court, the facts did not warrant the admission of the statements referred to.

Whatever might be said of the declaration to Dr. Nall immediately after the shooting, the declaration made at the next call a week later, and others in the intermediate time, 'were not made certainly, "within view of *the certainty of death, or almost immediate dissolution," in the language of the case of *Smith* v. *The State*, 9 Hum., 20, nor even as far as we can see, under a sense of despair of ultimate recovery, after a lengthened illness.

It is true, as said in the above. case, "It is not necessary that these apprehensions should be embodied in words to a by-stander by the deceased, but it will be sufficient if the danger be so imminent and immediate as to satisfy the judge that the deceased must have been of necessity laboring under an impression of almost immediate dissolution." We do not find these conditions to exist in this case.

The jury returned a verdict of guilty of "manslaughter," without saying whether voluntary or involuntary, and the punishment is fixed at two years, a period equally appropriate to both grades; it is now insisted that it is void and the plaintiff in error entitled to be discharged.

We need but say, that at most it is an erroneous verdict, and might have been reversed for such error—certain are we that the prisoner could not be entitled to a discharge because of such error. This would be to make every verdict not in accordance with law equivalent to an acquittal, a very convenient rule to parties charged with crime, but not creditable to the intelligent administration of the law.

If it had been necessary to decide what should have been done on affirmance of such a verdict, it is probable it would be held, that in favor of the prisoner, the verdict should be referred to the lowest grade of manslaughter to which the time of punishment would apply, and be affirmed. It is not necessary to decide the question definitely.

Reverse the judgment and remand the case.